Good morning. Mark Overland on behalf of Appellant Mr. Ross. I think this case gives this court not just the opportunity to remedy the district court's erroneous ruling on the motion to dismiss, but also to clarify and give guidance to courts and litigants on the rule of Abramson and Bendix in terms of what is involved in this weighing process in order to determine the constitutionality of section 351. There is no circuit decision on this since Abramson was decided in 1990. There's a number of state appellate decisions and they go all over the court. Aren't you arguing a distinction without a difference here, Mr. Overland? Because say you're right that Bendix and Abramson involved causes of actions relating more directly to interstate commerce, but why does that matter? Well, I think it matters because, as we'll see when I get to hopefully to the end of the argument, when the transaction which is the basis of the claim is an interstate commerce transaction, then it's pretty clear in terms of the impact that that has on interstate commerce. The nexus between the claims and the interstate commerce activity is much clearer than having to determine the actual interstate commerce activity of a particular defendant. As I understand Mr. O'Neill's argument, the burden that would be placed on him is that in order to prevent tolling, he would have to physically be present in California. Isn't that an obvious burden on his ability to play NBA basketball? Well, I'll get to that in a minute, but the answer is no. Why doesn't it force him to choose between being in California that the statute isn't tolled or pursuing his career as an NBA player? I'm sorry, Your Honor? Why, as 351 as applied to O'Neill, if he wanted to, I mean, if he wanted to avoid tolling, he would have to stay in California for the three years, right? Not necessarily. For some period of time within the three years. Okay, well. Not the entire period.  I think that would depend. And the issue is not how long he would have to stay, but the issue is here in this case whether or not the facts show that there has been an actual burden on interstate commerce based on the facts before the Court at the time of the motion to dismiss. So I know that that's how the O'Neill frames the issue. That's not really the issue. The issue is whether or not the District Court has sufficient facts before it to, when it engaged in the weighing process, determine that there was a substantial burden on interstate commerce. Whether or not he would have had to move is not the issue. The issue is, what is the interstate commerce activity that was before the Court? And based on that, was there a substantial burden on that activity? So what the Court has to focus on is, what is the actual interstate commerce activity? And I think what the fallacy, the Court engaged in, the District Court engaged in, was that, well, he was an NBA player, and therefore he engaged in interstate commerce. Well, what if he played in one game during that entire period of time? Does that absolve him? He's still an NBA player living, residing elsewhere. Well, and even if he could have theoretically flown back to California after playing every game or a few games, doesn't that impose an unreasonable burden on him? On Mr. O'Neill? Yes. Why would that be an unreasonable burden? Who knows where he was? Maybe he was in California. At this stage of the proceedings, we don't know where he was. So let me ask you another question. Okay. I'm sorry. So you were – Just finish. Oh, I'm sorry. I thought you were finished. Go on. All we know from the record is that he, for 226 days, he was engaged in NBA activity. For what? I'm sorry. 226 days. He was? Engaged as an NBA player. That's all we know from the record. Now, it may very well be that he was doing other things as an NBA player during the period of limitations. But we don't know that from the record. It may very well be later on that on discovery that we know that it would be a burden on him, but not on the basis of this record. Well, can I ask another question now? I'm sorry. Okay. So you filed – Ross filed these lawsuits that have – I guess two of the causes of action are two-year statute of limitations, and one of them is three years. During those years, I'm quite certain that O'Neill would have come to California to play basketball, particularly against the Lakers on Christmas Day. Why wasn't he served then? I don't know that he played, though. On this record, I don't know. It doesn't matter if he's played or not. He'd be physically present. If he actually had playing minutes, he'd be physically present in California. He could have been served. And moreover, your client could follow the NBA schedule and figure out when – I'm assuming, was he on the Miami Heat during this period of time? Which – He was on various teams. Various teams, okay. He could follow the NBA schedule and figure out when he would be in California playing. Actually not, because he didn't play that many games. We understand that, but he still traveled with the team. No, we don't know that, because he was injured. I don't know – This is not on the record. You know, I've watched a lot of basketball games. I see the whole team with the injured people and everybody sitting there. We don't know what injury he had. The problem with this case is that on the record before us, and what the court did was conjecture as to what could have happened. It may very well be that the court is correct. It may very well be that he did come to California. It may very well be that he did travel with the team. It may very well be that his injuries weren't severe enough to put him in a hospital and he didn't stay wherever he was in Boston or Miami or wherever he was at the time. But the problem with the case is that at this stage of the proceeding, we don't know that. It's all conjecture. Well, I think Mendix and Abramson were both dismissed on a 12b-6. What evidence did those courts have available to evaluate the impact on interstate commerce? Abramson was a case where the actual activity was the basis of the claim. Abramson was a sale, I think, of coins and currency. That was the basis of the claims, the fraud and breach of contract. How about Mendix? Mendix also was the activity itself, was the interstate commerce activity, was the basis of the claim, was the installation of a boiler by the defendant who was a Delaware corporation and the plaintiff was an Ohio corporation. So in those cases it was easy because the activity itself was the basis of the claim. Okay, well, the claims at the time began accruing on the claims Ross had in 2007 and 2008. I'm sorry, Your Honor. When did the cause of action begin to accrue under the statute of limitation? The cause of action was in 2008. And there was a 2007 also, an incident in 2007, right? Yes. Okay, so it was 2007 and 2008. Right, 2007 and 2008. The court granted judicial notice as to where, on which team Mr. O'Neill was playing in 2007 and 2008. Yes. Right? Yes. Okay, so it says he was playing 2007, Miami. 2008, Miami. 2007, eight. I can't read that. Phoenix. So he wasn't residing within the state, but he certainly would have... You're complaining that we don't have documentary evidence in the record that he actually came to California. Yeah, my complaint is that the court granted the motion to dismiss. If you look at page 13 of the excerpt of record, what she said is that common sense dictates O'Neill must have been practicing, training, and otherwise engaged in his employment with the NBA during the judicially noticed period. And I think this court is taking it a step further and saying maybe that common sense dictates that he must have been in California. Well, maybe he was, but we don't know that at this stage. I think her thing, which is a step away from what... I'm on a tangent. I'm really on a tangent. Like, did you miss your opportunity to serve him when you could? Her ruling is that when you're an NBA player, even if you're injured and you don't have a lot of playing time, you still have to work out. You have to do strength and conditioning or rehabilitation or whatever it is to get yourself back up to snuff so that you will get your playing time. I don't know. I don't know whether he did or not. It certainly didn't improve his free throw shooting, so I don't know. Well, I know. That was too bad, wasn't it? It was. Hack a shack. Yeah. Okay. So, you know, I mean, I don't know what he was doing. And we don't know what he was doing. It's certainly possible, but what's in the record? There's nothing in the record other than the fact that for 226 days he played in certain ballgames. We don't know why he didn't play other times. We don't know where he was. We don't know what he was doing. Maybe he had a leave of absence. I don't know. Okay. You're over your time, and I think we understand your argument. So let's hear from the other side. Good morning, Your Honors, and may it please the Court. My name is Jonathan Steinsabir of Kinsella-Weitzman-Eyserkamp & Aldersert, and I represent the defendant, Anapali Shaquille O'Neal. I want to start off, actually, with a point that my friend raised about the Bendix case  that was the subject of the case involved interstate commerce. And the transaction, as he correctly stated, was the installation of a boiler in Ohio. And in Justice Kennedy's opinion, he notes that, I think, in pages 889 and 890. But, in fact, there's a dissent in Bendix, and that's Chief Justice Rehnquist writing solely for himself. And he makes the exact point that counsel makes, which is he believes the installation of a boiler does not involve interstate commerce, and therefore, this case shouldn't, the Bendix case shouldn't have even been reviewed under the Commerce Clause. And the majority, the Court's response to that is nothing. Clearly, the Court didn't, it didn't disagree with Chief Justice Rehnquist that it did not involve interstate commerce. It just didn't find the fact material at all. And that's because if you read the Bendix case, the Bendix case does not require that the commerce, that the interstate commerce at issue be related to the allegations of the complaint. Rather, all the Bendix case requires, and I'm quoting from page 893 of the U.S. Reporter, Volume 46, is what it requires is that, where a state denies ordinary legal defenses or like privileges to an out-of-state person or corporation engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether it's permissible under the Commerce Clause. So the question is, is the defendant engaged in commerce? And here, we know that the answer is yes. How do we know that? Because we know that Mr. O'Neill was an NBA basketball player for all three of these years. We know that because the District Court took judicial notice of the records of the NBA. And we also know that because under the rules of evidence, under Rule 201, you're allowed to take judicial notice of facts that are commonly known. It is commonly known that Shaquille O'Neal was an NBA basketball player during these three years. And as my friend said on the other side, he played in 226 games during these three years. This wasn't an insubstantial amount of commerce. This was a lot of commerce. And the NBA is a multibillion-dollar business. You can use your common sense that it requires him to cross state lines, to cross the international border. Let me ask you something about, you said he played in a certain number of games. Is that relevant, given that he had a contract to be on a team? It's not relevant. I mean, it buttresses my point, but the broader point is that he had a contract to play for three teams during this period. Just to answer Your Honor's question, it was the Phoenix Suns, the Cleveland Cavaliers, and the Boston Celtics. This was the tail end of his career. And yes, he had a contract which required him to engage. He had a contract with an interstate commercial entity, the teams in the NBA. That contract required him to do a lot of work, to travel across state lines and whatnot, and to engage in commerce. And to comply with this statute would require him to have moved to California and stayed stationary in California for three years. There's no other way he would not have gained the benefit of the statute of limitations. And the key point there is that he is therefore, as an out-of-state citizen engaged in interstate commerce, being treated differently than an in-state citizen. Whereas a California resident can gain the benefit of the statute of limitations just by going home at night and staying in California. An out-of-state citizen... And they can go on vacation and not have those days be deducted from the running card. It's not clear to me on that. If they go on vacation, whether it counts or not. I think, frankly, this is sort of an intellectual exercise. I think the statute shouldn't even apply to California residents because you're discouraging them from engaging in commerce by traveling to other states. And traveling across state lines, by the way, is a paradigmatic example of interstate commerce. Going back to Chief Justice Marshall's opinion, Gibbons v. Ogden, in the Supreme Court's 1941 opinion, Edwards v. California, just traveling across state lines is interstate commerce. So I don't think there really is many constitutional applications. So what's the discriminatory difference between state residents and non-state residents? The discriminatory... It has quite a bit of a discriminatory impact. That is, a state resident is, by definition, almost always in California. And therefore is going to gain the benefit of the statute of limitations while they're in California. So for the last three years, I know I spent, with the exception of a few weeks on vacation, all my time here. So I'm getting all the benefit of the California statute of limitations. An out-of-state resident, by definition, is generally not in the state. And so they're not getting the benefit of the statute of limitations. What distinguishes this case from Mounts? From Mounts v. Oueda? Yeah. Well, one thing is that Mounts involved two local residents. And the interests involving local residents are less for the reasons I just gave to Judge Rustani. And also, I mean, Mounts is not binding authority. And the statement that Mounts made that there is a requirement that the injury at issue be caused in interstate commerce is simply not supported by Bendix or this Court's decision in Adamson. And Mounts, I would say that that specific holding right there has been rejected, if not expressly. But it certainly has been rejected by the California Court of Appeal in two later cases, the Dan Clark case and the Heritage Marketing case, which we cited in our briefs. I mean, it absolutely rejected that. And is Section 351 always unconstitutional? Does it matter why the defendant is out of the state? I mean, we do not need to reach that opinion. But, I mean, as an intellectual exercise, I can't imagine a constitutional application of the statute because what it is doing is it is discouraging people from leaving the state of California. And as Justice Jackson said 75 years ago, the state does not have a right to deprive people of engaging in interstate commerce. And just traveling across state lines is, again, a paradigm example of interstate commerce. The district court took judicial notice of Mr. O'Neill's career stats. Was there anything or any other evidence in the complaint that was considered on the motion to dismiss? I mean, it looks like that's Mr. Overland's main point here is that there wasn't, there should have been allowed for factual development. Sure, and let me just address that. It did, of course, look at the complaint to compute the limitations period. So it did look at that. But you're right, for the actual engaging in commerce, it looked at judicially noticeable facts. And it's completely appropriate for courts to look at judicially noticeable facts on a Rule 12b-6 motion. And I would simply ask, what would we need to look at in discovery? And in this court's decision in Abramson, in fact, that was a 12b-6. Not only was it a 12b-6, the constitutionality of 351 hadn't even been raised in the district court. Rather, the Ninth Circuit took the extraordinary step of considering it for the first instance on appeal. And it didn't need any discovery to understand what the burden is on commerce. Because that really is judicially noticeable of what the burden is on commerce. And it didn't need any discovery on what the interest of the state of California is to engage in this weighing analysis. Because we know what the interest of the state of California is. It was stated by the California Supreme Court in the Due case. And it's identical to the interest of the state of Ohio in the Mendix case. And just on one other matter, I think really the best case that takes this issue the most head-on is the district court opinion. But I know I have former district judges up here, so it might not be as much precedential opinion as an appellate court. But I think this is a very well-reasoned case, which is the Tessar v. Hallis case from the Northern District of Ohio. And it's at 738F sub 240. It's in our briefs. And that case dealt with an Ohio statute that was not the Mendix statute. But it was essentially, it was effectively the exact same statute we're dealing with here. And the district court addressed this exact issue about whether there needed to be a relationship. And it rejected it for pretty much the same reasons that we're saying, which is that by applying this statute, you would, in the words of the court in that case, you would be holding a person hostage in a state if they believe that they have committed tortious activity. They could not leave for the period of the running of the statute of limitations. And not letting a person leave or making them choose between engaging in commerce or getting a privilege that they should otherwise have is an impermissible burden of commerce. We know that from Mendix. We know that from this Court's opinion in Abramson. And we know that from, really from all the other cases. Unless Your Honors have questions, I believe I don't have anything more. I guess am I wrong in thinking that during this period of, during the period of time that the statute would have been running that Mr. O'Neill would have come to California? Yes. If he had come here for three years, it wouldn't run. And in fact, when he came here for NBA basketball games, we can compute it and we could probably get 30 or 40 days. The way the statute works is when you're in California, it runs. When you're out of California, it doesn't. So it would require three years. But the whole point was that all they needed to do was to serve him, right? Yeah. I mean, that shows why the state's interest is so weak. And that's exactly what the Supreme Court said, which is that there's a long-arm statute in Ohio that we have, of course, there's a long-arm statute here that would allow them to serve him out of state. And we just brought up in District Court the extra point that Your Honor raised and that the District Court caught onto, which is, well, not only could you use the long-arm statute, you could serve him here when he's here at least five, six times a year playing against the various different teams here. You could personally serve him and you don't even need to use the long-arm statute. And then you have no questions about jurisdiction. You've got everything you need when you personally serve someone in the state. So that's just an extra point that just buttresses why California has a very small interest as applied to this case. All right. Any further questions? Thank you, Your Honor. Thank you. Respectfully request that the District Court be affirmed. Thank you. All right. Thank you. So, Ross versus O'Neill is submitted.
judges: Restani, Wardlaw, Murguia